**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KAHN ELIJAH DOCKERY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-cv-6188 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| MARYVILLE ACADEMY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's motion for summary judgment [43]. For the reasons set forth below, Defendant's motion for summary judgment [43] is granted. Plaintiff is given until April 29, 2019 to file materials relating to the viability of his retaliation claim, as discussed below. Plaintiff's failure to file these materials by that date will result summary judgment being granted in favor of Defendant on Plaintiff's retaliation claim and this civil case being terminated. Defendant is given until May 27, 2019 to file a response to any materials that Plaintiff may file. The Court will set this case for further status hearing after reviewing any materials submitted on the briefing schedule above.

## I.        Background

Defendant Maryville Academy is a not-for-profit child welfare agency that runs private shelter and residential programs for children and teenagers in Des Plaines, Illinois. [46 (Def.'s Stmt. of Facts), at ¶¶ 1, 37.] The programs are staffed 24 hours a day, seven days a week, 365 days a year. [*Id*. at ¶ 37.] *Pro se* Plaintiff Kahn Dockery was an employee of Defendant. [*Id*. at ¶ 1.] After Plaintiff moved back to Chicago from Tennessee in July 2011, he was rehired by

Defendant (who previously employed Plaintiff before he moved to Tennessee) as a youth care worker. [*Id.* at ¶ 2.] When Plaintiff was rehired in July 2011, Plaintiff identified himself as a "Jew" on his employee information sheet. [*Id.* at ¶ 24.] Plaintiff's initial schedule required that he work every other weekend, which Plaintiff testified included Saturday and Sunday. [*Id.* at ¶¶ 3, 5.] Plaintiff's shift was 2:00 p.m. to 10:00 p.m. [46-1 (Pl.'s Dep. Tr.), at 18:1-5.] During that period, Plaintiff did not indicate that it was against his religion to work weekends. [46 (Def.'s Stmt. of Facts), at ¶ 4.] Nor did Plaintiff request any accommodation. [*Id.*] In July 2012, Plaintiff was promoted to the position of evening supervisor at the St. Martin de Porres program at Maryville. [*Id.* at ¶ 6.] In that position, Plaintiff worked Sunday through Thursday. [*Id.* at ¶ 7.] However, Plaintiff was on-call for work duties every other weekend. [*Id.*] Being on-call meant that Plaintiff had to be available by cellular phone to assist with any work emergencies and to go to work if necessary. [*Id.* at ¶ 8.] Although Plaintiff testified that he rarely had to go into the office when he was on-call during the weekend, he acknowledged that it did sometimes happen. [46-1 (Pl.'s Dep. Tr.), at 21:15-18, 22:8-11.] On-call weekend hours were Friday from 3:00 p.m. through Monday at 6:00 a.m. [46 (Def.'s Stmt. of Facts), at ¶ 9.] Plaintiff occasionally asked for specific days off—such as the Day of Atonement (*i.e.*, Yom Kippur) and other high holidays—but did request a religious accommodation to be relieved of his on-call duties every other weekend. [*Id.* at ¶ 10; 46-1 (Pl.'s Dep. Tr.), at 22:23-23:5.]

Eventually Plaintiff was transferred to the St. George program at Maryville, after the St. Martin de Porres program closed. [46 (Def.'s Stmt. of Facts), at ¶ 11; 54 (Def.'s Resp. to Pl.'s Stmt. Add'l Facts), at ¶ 2.] Plaintiff was informed that his days off in the new program would be Sunday and Monday instead of Friday and Saturday. [46 (Def.'s Stmt. of Facts), at ¶ 12.]

2

However, Plaintiff contends that the Executive Director Sister Cathy[1] Ryan and the Division Director Evelyn Smith gave him a verbal guarantee that he would be moved bilaterally to a different program, keeping the same shifts, days off, and employee benefits.[2] [48 (Plaintiff's Resp. to Def.'s Rule 56.1 Stmt.), at ¶ 12.] Plaintiff further claims that he did not receive any written documentation from the personnel department relative to the change in his work schedule. [*Id.*] In his deposition, Plaintiff provided the following account of his reaction to being told that he would have to work Fridays and Saturdays:

> Q: When you were told that your days off would now be Sunday and Monday, what, if anything, did you say?
>
> A: I believe I asked if something can be changed or if Carr and I can switch days, or if there was some kind of way that those off days could continue to be -- if those off days could be respected. I've been used to them for over two years now in the program and I was pretty much set in my lifestyle with those days.
>
> Q: At that time did you specifically indicate that you needed those days off due to your religion?
>
> A: I believe Ms. Gaston asked for reasons why I would need those days off. I explained to her because of my religious belief system.
>
> Q: What specifically did you tell her?
>
> A: I told her I've been used to having these days off, and I have become accustomed to having these days off and to be able to worship with my family and do different things with my family around those days off that I've been used to having or following my schedule that I would usually do in life on those days off.

---

[1] Plaintiff spells the name Kathy with a "K" while Defendant spells it Cathy with a "C." The Court assumes Defendant's spelling is correct, as Defendant presumably has access to personnel records.

[2] Defendant notes that Plaintiff has provided inconsistent statements regarding who told him that he would be able to keep the same days off. [54 (Def.'s Resp. to Pl.'s Stmt. of Add'l Facts), at ¶ 3.] However, such inconsistencies go to the credibility of Plaintiff's statement. Defendant also notes that Plaintiff has not produced any testimony from Evelyn Smith or Cathy Ryan supporting that assertion. However, Plaintiff may rely on his own testimony to establish a fact. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993) ("The nonmoving party's own affidavit or deposition will constitute affirmative evidence to defeat a summary judgment motion[.]" (citations omitted)). Regardless, the viability of Plaintiff's claim is not dependent on this fact.

[46-1 (Pl.'s Dep. Tr.), at 40:2-24.] After being told that Sundays and Mondays were his days off, Plaintiff nonetheless reported for duty on a Sunday evening in October of 2014. [54 (Def.'s Resp. to Pl.'s Stmt. of Add'l Facts), at ¶ 4.] Plaintiff's immediate supervisor Marikah Carr informed Plaintiff that he could not work on Sundays because it conflicted with his own days off.[3] [*Id.* at ¶ 6.] Mr. Carr then sent Plaintiff home.[4] [*Id.* at ¶ 7.] Plaintiff returned to work on Tuesday and worked through Thursday. [48 (Pl.'s Aff.), at 40.] He again reported to work on Sunday, at which time Mr. Carr again sent Plaintiff home. [*Id.*] This pattern continued for several weeks until a meeting was called by Program Director Sabrina Gaston. [*Id.*] At that meeting, Plaintiff informed Ms. Gaston that he "could not accept [having Sunday and Monday off] due to a personal conflict." [*Id.*] He further explained that he could not revert back to working regularly on Fridays and Saturday due to his religious beliefs. [*Id.*] According to Plaintiff, Ms. Gaston asked Plaintiff if he would be willing to quit his job because of his religious beliefs. [*Id.*] After Plaintiff responded in the affirmative, Ms. Gaston instructed Plaintiff to write a statement of resignation citing his religious belief as his cause.[5] [*Id.*] Believing there was no other option, Plaintiff drafted such a letter. [*Id.*] On November 2, 2014, Plaintiff tendered his resignation letter to the then-Director of

[3] Defendant contests this fact "as written" by Plaintiff. However, Defendant does not challenge the evidentiary basis cited by Plaintiff. Nor does Defendant cite any contrary evidence. Accordingly, Plaintiff's statement is deemed admitted. *Shelton v. Wright*, 2013 WL 212910, at *2 (N.D. Ill. Jan. 18, 2013). Even if Defendant had identified contrary evidence, on Defendant's motion for summary judgment, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016).

[4] Defendant disputes this fact, asserting that the Plaintiff's citation is misleading and conclusory and that the pages cited by Plaintiff speak for themselves. However, the cited materials support Plaintiff's assertion. Defendant does not explain how the fact is misleading and/or conclusory. And Defendant does not identify any contrary evidence. The Court therefore credits this fact, as well as other properly supported facts challenged by Defendant on similar bases.

[5] The Court recognizes that Ms. Gaston denies directing Plaintiff to draft a resignation letter. However, Plaintiff's testimony supports this assertion, creating an issue of fact with respect to that issue. *Sarsha*, 3 F.3d at 1041.

Human Resources Betty Barnes.[6] [*Id.*] Ms. Barnes did not provide any receipt for the letter, nor did she place the letter in Plaintiff's personnel file.[7] [*Id.*]

A few days later, Plaintiff was instructed to provide proof of his religious affiliation to the Human Resources Department. [*Id.*] Plaintiff provided Defendant a letter from his brother Reverend Ruben Dockery—Founder and Pastor of Beythel Family Church in Nashville, Tennessee—indicating that Plaintiff was a member of that church.[8] [46-3 (Def.'s Ex. 3).] The letter indicated that Plaintiff's "family teachings and religious practices have been based on the same principles all of his life." [*Id.*] The letter further indicated that since moving back to Chicago, Plaintiff had "been in fellowship with a local Sabbath observing group." [*Id.*] Plaintiff's brother ended the letter by noting that he was happy to respond to any further inquiries. [*Id.*] But the letter did not affirmatively state that Plaintiff's religion requires that he have Fridays and

---

[6] Plaintiff contends that Ms. Barnes attempted to persuade Sabrina Gaston to reverse her actions, via a phone conversation. [54 (Def.'s Resp. to Pl.'s Stmt. of Add'l Facts), at ¶ 18.] However, the portion of Ms. Barnes's deposition testimony cited by Plaintiff does not support that assertion.

[7] Plaintiff asserts that Ms. Barnes was demoted soon after she attempted to help Plaintiff with his request for a religious accommodation. Although Ms. Barnes changed position from Director of Human Resources to Assistant Director of Human Resources just days after Plaintiff claims he submitted his resignation letter, there is no evidence that this change in position was in any way connected to Plaintiff's request for an accommodation. To the contrary, Ms. Barnes testified that she was not demoted and that her position changed because there was a restructuring of the department that went into effect once the union went into effect. [53 (Barnes Dep. Tr.), at 10:16-20.]

[8] Defendant cites numerous facts regarding how Beythel Family Church allows members to determine for themselves what doctrinal principles to follow, such as what teaching regarding the Sabbath to follow. [46 (Def.'s Stmt. of Facts), at ¶¶ 32-35.] While these facts do not establish that Plaintiff sincerely believed that it was against his religion to work on the Sabbath, they also do not undermine that claim. For example, it could be true that Plaintiff sincerely believes that his religion prohibits him from working on the Sabbath and also true that the Beythel Family Church allows members to attend worship services on Fridays, Saturdays or Sundays. The Court therefore finds these facts of limited usefulness.

Saturdays off from work.[9]  [*Id.*; 46 (Def.'s Stmt. of Facts), at ¶ 18.]  Plaintiff's brother has been an ordained minister for over 20 years.  [54 (Def.'s Resp. to Pl.'s Stmt. of Add'l Facts), at ¶ 27.]

Defendant submitted an affidavit from Teresa Maganzini, Director of Human Resources and Employee Relations at Maryville Academy, indicating that "[g]iven the timing of the letter, questions about what, if any relationship the author of the letter had to [Plaintiff], and [her] own knowledge that Plaintiff had worked many Fridays and Saturdays in the past, [she] requested additional information from [Plaintiff] regarding his religious beliefs and his request for a religious accommodation."  [46-7 (Maganzini Aff.), at ¶ 14.]  On November 14, 2014, Plaintiff was summoned to the office of Ms. Maganzini.  [48 (Pl.'s Aff.), at 41.]  Ms. Maganzini informed Plaintiff that she had some concerns.  First, she told Plaintiff that she needed additional documentation from Plaintiff regarding his requested accommodation.[10]  [*Id.*]  Second, she mentioned a case that Plaintiff was involved in while he lived in Nashville that had no bearing on his request for a religious accommodation.  [*Id.*]  Plaintiff contends that it then became apparent to him that Defendant would not provide him a religious accommodation, so he filed a complaint with the Equal Opportunity Commission ("EEOC") on November 17, 2014.  [*Id.*]  However, Plaintiff continued to work for Defendant.  [46-1 (Pl.'s Dep. Tr.), at 54:19-22; 46-5 (Def.'s Ex. E).]

---

[9] Plaintiff disputes this fact.  However, in so doing, Plaintiff recognizes that any "specific reference to 'requirements of off days' were not addressed."  [48 (Plaintiff's Resp. to Def.'s Stmt. of Facts), at ¶ 18.]  Plaintiff contends that this is because Defendant never identified what information they needed.  Given that Plaintiff was seeking an accommodation based on his claimed religious belief that he cannot work on the Sabbath, however, it is unclear why such information would not be included.

[10] In his response to Defendant's statement of facts, Plaintiff repeatedly asserts that "a specific request for details in writing to Teresa A. Maganzini was made."  [See, *e.g.*, [48 (Pl.'s Resp. to Def.'s Stmt. of Facts), at ¶ 21.]  Although the cited portions of his deposition indicate that Plaintiff verbally requested more details regarding what additional information was needed, the cited material does not reference any written request to Ms. Maganzini.

On November 26, 2014, Plaintiff called off work because of illness. [46-1 (Pl.'s Dep. Tr.), at 54:14-18; 46-5 (Def.'s Ex. E).] On December 1, 2014, Ms. Maganzini sent Plaintiff an email purporting to memorialize a November 26, 2014 conversation. [46-4 (Def.'s Ex. D).] In that email, Ms. Maganzini asked that Plaintiff "provide documentation of the specific belief of Judeo-Christian doctrine with regard to Sabbath observance as well as identifying information for the local Sabbath observing group with which" Plaintiff was affiliated. [*Id.*] Plaintiff again called off of work on December 2, 2014, again because of illness. [46-1 (Pl.'s Dep. Tr.), at 54:23-55:6; 46-5 (Def.'s Ex. E).] Between December 3, 2014 and December 13, 2014, Plaintiff did not come to work.[11] [46 (Def.'s Stmt. of Facts), at ¶ 22.]

On December 19, 2014, Ms. Maganzini sent Plaintiff a letter asking that he contact her no later than Monday, January 5, 2015 to discuss his intentions regarding his continued employment at Maryville Academy. [46-5 (Def.'s Ex. E).] The letter noted that Plaintiff failed to appear to work on nine separate occasions between December 3, 2014 and December 13, 2014, and that Plaintiff had not properly notified his Program Manager or Program Director of his work status. [*Id.*] The letter also indicated that Plaintiff "failed to provide documentation regarding [his] request for a religious accommodation of [his] schedule." [*Id.*] Although Defendant contends that Plaintiff failed to provide notice of this failure to appear at work during this period, Plaintiff testified that he attempted to contact his immediate supervisor Mr. Carr, but Plaintiff was unable to reach him. [46-1 (Pl.'s Dep. Tr.), at 55:22-56:10.] The Court credits that testimony.[12] Still,

---

[11] Plaintiff disputes this fact. However, Plaintiff does not cite to any evidence indicating that he went to work on these dates. Furthermore, in his deposition, Plaintiff contested whether he attempted to contact his supervisor regarding these absences but did not contest that he failed to appear for work during this period. [46-1 (Pl.'s Dep. Tr.), at 55:7-56:1.]

[12] Plaintiff also provided phone records which the Court believes Plaintiff submitted to show that he called his direct supervisor. [48, at 25-32.] It is likely that these are the phone records referenced in Plaintiff's deposition. However, Plaintiff does not provide any sort of explanation or authentication of the phone

Plaintiff has not presented any credible evidence establishing that he responded to Ms. Maganzini's December 19, 2014 letter requiring that he contact her. Although Plaintiff testified that he was "pretty sure" that he called Ms. Maganzini after he received her December 19, 2014 letter requiring that he contact her, he was unable to recall whether he was able to speak with or whether he left a message. [*Id*. at 53:11-54:2.] Nor could Plaintiff recall when he spoke with her. [*Id*. at 54:3-5.]

On January 9, 2015, Plaintiff appeared at Maryville Academy at Ms. Maganzini's request. [46-7 (Maganzini Aff.), at ¶ 19.] Defendant terminated Plaintiff on January 9, 2015. [46 (Def.'s Stmt. of Facts), at ¶ 41.] Ms. Maganzini submitted an affidavit averring that she terminated Plaintiff because of his continuing failure to report to work. [46-7 (Maganzini Aff.), at ¶ 19.] The reason for termination listed on the Discharge Action Document was job abandonment. [46-6 (Def.'s Ex. F).] The Discharge Action Document noted that Plaintiff failed to report to work on 30 days from November through January, including January 6-8, 2015, the three days immediately preceding his termination.[13] [*Id*.] The Discharge Action Document further noted that Plaintiff was absent from work for three consecutive days without calling a supervisor. [*Id*.] Plaintiff has not submitted any evidence indicating that he attempted to contact his supervisor or anyone else at Maryville on January 6-8, 2015.

---

records. Still, for the purposes of Defendant's motion for summary judgment, the Court credits Plaintiff's testimony on this issue.

[13] Defendant's statement of facts indicates that Plaintiff did not report to work for a total of 31 days between November 3, 2014 and January 8, 2015. [46 (Def.'s Stmt. of Facts), at ¶ 23.] The difference between 30 days and 31 days is not outcome determinative. Plaintiff disputes that he did not report to work for a total of 31 days during this time period, not based on the number of days identified, but based on the fact that he was unjustly sent home when he reported to work on a Sunday in October and the fact that he was forced to resign. The Court considers the impact of those facts on the arguments addressed below. However, those facts do not contradict Defendant's assertion that Plaintiff did not appear for work on the identified dates.

The EEOC provided Plaintiff with a right to sue letter on March 22, 2016. [1, at 5.] Plaintiff filed this lawsuit on June 14, 2016. [See 1.] During Plaintiff's deposition, Plaintiff answered numerous questions about his religion and his beliefs. For example, Plaintiff was asked to identify his religion:

Q: * * * What religion do you belong to?

A: I would like to consider it a culture. My family, my mother and father raised me under, I guess general view Judaism. But my family see it as a culture versus a religion.

Q: When you say your family views it as a culture versus a religion, is that the way you view it?

A: Yes.

[46-1 (Pl. Dep. Tr.), at 23:16-24:1.] During his deposition Plaintiff was unable to name the high holy days from his claimed religion. [46 (Def.'s Stmt. of Facts), at ¶ 26.]

In his opposition to Defendant's motion for summary judgment, Plaintiff makes reference to a settlement offer made to Plaintiff and the fact that Ms. Maganzini testified that her recollection was that a settlement was made because Defendant just wanted "to make it go away." [51 (Maganzini Dep. Tr.), at 14:7-14.] Although Plaintiff asserts that the offer was made "[d]uring the time of [Ms.] Maganzini's supervision of" Plaintiff's request for an accommodation [54 (Def.'s Resp. to Pl.'s Stmt. of Add'l Facts), at ¶ 24], Plaintiff has not presented any evidence regarding when the settlement offer was made. The cited deposition testimony does not support Plaintiff's contention that the offer was made "[d]uring the time of [Ms.] Maganzini's supervision of" Plaintiff's request for an accommodation.

## II.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ.

P. 56(a). Rule 56 makes clear that whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. *Id.* In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor (here, Plaintiff). *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). But Plaintiff "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation and quotation marks omitted). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324.

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For

this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events."  See *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007).  In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

## III.    Analysis

 "Title VII prohibits employers from discriminating against employees and job applicants based on their religion."  *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013) (citing 42 U.S.C. § 2000e–2(a)).  As defined by Title VII, the definition of "religion" also includes "an implied duty to accommodate employees' religions and an explicit affirmative defense for failure-to-accommodate claims if the accommodation would impose an undue hardship on the employer."  *Id*.  Defendant moves for summary judgment on Plaintiff's Title VII failure to accommodate and discrimination claims.

### A.    Failure to Accommodate

 "To prove a Title VII claim for failure to accommodate religion, an employee must prove three things: (1) 'the observance or practice conflicting with an employment requirement is religious in nature;' (2) the employee 'called the religious observance or practice to [the] employer's attention;' and (3) 'the religious observance or practice was the basis for [the employee's] discharge or other discriminatory treatment.'"  *Adeyeye*, 721 F.3d at 449 (quoting *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012)).  "If the employee shows these

elements, the burden then shifts to the employer to show that it could not accommodate the employee's religious belief or practice without causing the employer undue hardship." *Id.* (citing *Baz v. Walters*, 782 F.2d 701, 706 (7th Cir. 1986)).

i.      *Sincerely Held Religious Belief or Practice*

Defendant argues that summary judgment should be granted on Plaintiff's religious accommodation claim because Plaintiff cannot demonstrate that his sincerely held religious beliefs prevented him from working on Fridays and Saturdays. As discussed above, in order to succeed on a religious failure to accommodate claim, Plaintiff must show that the observance or practice conflicting with an employment requirement (here, working on the Sabbath) is religious in nature. *Adeyeye*, 721 F.3d at 449. "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C.A. § 2000e(j). "In interpreting what qualifies as religion under the broad statutory definition of Title VII," the Seventh Circuit has identified the relevant test as "whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by orthodox belief in God." *Adeyeye*, 721 F.3d at 448 (quoting *United States v. Seeger*, 380 U.S. 163, 166 (1965)) (internal quotation marks omitted).

Defendant moves for summary judgment on the ground that Plaintiff cannot show that his request for Fridays and Saturdays off was the product of a sincerely held religious belief or practice. In support of that argument, Defendant notes that Plaintiff referred to his belief as a culture and not a religion, citing to the following deposition testimony:

Q:  * * * What religion do you belong to?

A:  I would like to consider it a culture.  My family, my mother and father raised me under, I guess general view Judaism.  But my family see it as a culture versus a religion.

Q:  When you say your family views it as a culture versus a religion, is that the way you view it?

A:  Yes.

[46-1 (Pl.'s Dep. Tr.), at 23:16-24:1.]  Although Plaintiff referred to Judaism as his "culture" in his deposition, Plaintiff went on to describe part of that "culture" in religious terms.  For example, Plaintiff explained that part of his "culture" is his belief that "Jesus Christ is a savior, versus just being a prophet."  [*Id*. at 24:2-14.]  Drawing all reasonable inferences in Plaintiff's favor, Plaintiff's testimony that he views his Judaism as his culture does not preclude a finding that Plaintiff has religious beliefs stemming from his Jewish culture.  Still, the Court understands how Defendant lacked (and continues to lack) clarity regarding Plaintiff's claimed religious beliefs.  It remains unclear to the Court what religion Plaintiff claims to belong.  Some evidence indicates that Plaintiff is Jewish.  Plaintiff identified himself as a "Jew" on his employee information sheet.  Plaintiff refereed to his culture as Judaism during his deposition.  Yet Plaintiff also testified that his culture believes that Jesus Christ is the savior.  Plaintiff's brother Reverend Ruben Dockery wrote a letter indicating that Plaintiff belonged to a church (not a temple or a synagogue) in Nashville, Tennessee that subscribes to the Judeo-Christian doctrine.  Still, the Court recognizes that "sincerity rather than orthodoxy is the touchstone" for determining whether a belief is sincerely held.  *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir .2011) (addressing claim under the Religious Land Use and Institutionalizes Persons Act).  Plaintiff need not "be a member of an authorized church or subscribe to its full menu of orthodox beliefs" to have a sincerely held religious belief.  *Seshadri v. Kasraian*, 130 F.3d 798, 800 (7th Cir. 1997) (citations omitted); see also *Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829, 831 (1989) (rejecting position that a religious

objection "must be found in a tenet or dogma of an established religious sect" in order to be protected by Free Exercise Clause of the First Amendment).[14]

Defendant also argues that Plaintiff's initial statements regarding his request to have Fridays and Saturdays off indicate that he wished to have those days off because of his personal preferences, not because of his religious beliefs. Plaintiff's own testimony provides support for this position:

> Q: When you were told that your days off would now be Sunday and Monday, what, if anything, did you say?
>
> A: I believe I asked if something can be changed or if Carr and I can switch days, or if there was some kind of way that those off days could continue to be -- if those off days could be respected. I've been used to them for over two years now in the program and I was pretty much set in my lifestyle with those days.
>
> Q: At that time did you specifically indicate that you needed those days off due to your religion?
>
> A: I believe Ms. Gaston asked for reasons why I would need those days off. I explained to her because of my religious belief system.
>
> Q: What specifically did you tell her?
>
> A: I told her I've been used to having these days off, and I have become accustomed to having these days off and to be able to worship with my family and do different things with my family around those days off that I've been used to having or following my schedule that I would usually do in life on those days off.

[46-1 (Pl.'s Dep. Tr.), at 40:2-24.] "[A]n employee is not permitted to redefine a purely personal preference or aversion as a religious belief." *Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931,

---

[14] Plaintiff relies on *Frazee* in support of his argument that he has identified sufficient evidence for a reasonable jury to find that his religious objection to working on the Sabbath was sincere. In that case, the Supreme Court held that it violated the appellant's First Amendment rights to deny him unemployment benefits because he denied a position that required him to work on Sunday because of his religious beliefs even though his objection to working on Sunday was "not claimed to represent a tenet of a religious organization of which he was a member." 489 U.S. at 835. However, in *Frazee*, the courts below did not question the sincerity of the appellant's belief and the appellee conceded the sincerity of his beliefs before the Supreme Court. *Id*. at 829. Furthermore, unlike this case, there is no indication that the appellant in that case previously had acted contrary to his claimed religious objection.

935 (7th Cir. 2003) (citations omitted). Defendant further argues that Plaintiff's prior conduct demonstrates that it was not against Plaintiff's sincerely held beliefs to work on the Sabbath. When Plaintiff returned to work for Maryville Academy in July 2011, he worked Fridays and Saturdays. [46-1 (Pl.'s Dep. Tr.), at 19:15-21.] Although Plaintiff no longer regularly worked on Fridays and Saturdays after he was promoted to evening supervisor around July 2012 [*Id*. at 20:1-7, 20:23-21:18], Plaintiff still had on-call responsibilities every other weekend. [46-1 (Pl.'s Dep. Tr.), at 20:1-21:11.] Being on call meant that Plaintiff had to have access to his phone during that time. [*Id*. at 21:12-14.] Although Plaintiff testified that he rarely had to go into the office when he was on call during the weekend, he testified that it did happen. [*Id*. at 21:15-18, 22:8-11.] During that time, Plaintiff would request that he be relieved of his on-call duty for "High Holy Days" such as the "Day of Atonement or Passover services." [*Id*. at 22:23-23:5.] There is no indication in the record that any such requests were denied. In that position, Plaintiff never requested an accommodation for his religious objection to working on the Sabbath. [46 (Def.'s Stmt. of Facts), at ¶ 10.]

During his deposition Plaintiff tried to explain why he previously was willing to work at Maryville Academy on the Sabbath:

> Q: When you say [the Sabbath] is a day of rest, under your culture do you work on Saturday?

> A: Not supposedly.

> Q: When you say "not supposedly," what do you mean by that?

> A: Being in America, sometimes life forces you to do things outside of what you would normally do, such as working at Maryville. But one may take that to be some [sic] different, because it is helping people or whatever, I guess. Depends on a person's perspective.

> Q: Did you consider your work at, your employment at Maryville to be helping people?

15

A: I did.  I do.

[46-1 (Pl.'s Dep. Tr.), at 26:16-27:5.]  But Plaintiff has never offered an explanation as to why his religious convictions changed between the time he worked in the St. Martin de Porres program and the time he was transferred to the St. George program.  *Cf. E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997) (affirming finding that plaintiff's religious beliefs were sincerely held where plaintiff explained that recent family events—including "her mother-in-law's death, her husband's growing faith, the birth of her son, and the death of her own father in Russia"—"caused religion to play an increasingly important role in her life").  Plaintiff's willingness to work on the Sabbath on an on-call basis immediately before he was transferred to the St. George program certainly calls into question the sincerity of Plaintiff's claimed religious objection to working on the Sabbath immediately after he was transferred.  *Hussein v. The Waldorf-Astoria*, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001) ("[Plaintiff] has made no effort to explain why, if his religion prevented him from shaving, he had never worn a beard before.  He does not contend, for example, that he had just converted to his religion."), aff'd sub nom. *Hussein v. Waldorf Astoria Hotel*, 31 F. App'x 740 (2d Cir. 2002).  At the same time, the Court recognizes that "Title VII and courts * * * do not require perfect consistency in observance, practice, and interpretation when determining if a belief system qualifies as a religion or whether a person's belief is sincere."  *Adeyeye*, 721 F.3d at 453; see also *Grayson v. Schuler,* 666 F.3d 450, 454-55 (7th Cir. 2012) ("[A] sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance; for where would religion be without its backsliders, penitents, and prodigal sons?").

Plaintiff argues that the fact that he was willing to resign demonstrates that his religious objection to working on the Sabbath was sincere.  In support of that argument, Plaintiff cites

*McGinnis v. U.S. Postal Serv.*, in which the court found that a postal clerk's conscientious objection to processing draft forms was based on a sincerely held religious belief. 512 F. Supp. 517 (N.D. Cal. 1980). In reaching that conclusion, the court found it compelling that the clerk was willing to jeopardize her job for her belief, which stemmed from her Quaker roots. *Id*. at 520 ("Particularly since Petitioner is willing to jeopardize her job in support of that belief, this Court has little occasion to question her assertion."). However, in that case, there was no evidence that the petitioner previously had acted inconsistently with her claimed religious beliefs. Furthermore, there was no evidence that the petitioner in that case had any non-religious reason for jeopardizing her job. Here, on the other hand, Plaintiff's own testimony indicates that he may have preferred to have Fridays and Saturdays off for "lifestyle" reasons.

The sincerity of a person's religious beliefs generally is an issue of fact not properly resolved on a motion for summary judgment. *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997) (recognizing that the sincerity of a religious belief generally depends on an "assessment of the employee's credibility"); *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) ("Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions. As such, they ordinarily should be reserved 'for the factfinder at trial, not for the court at summary judgment.'" (quoting *Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 49 (1st Cir. 1999)). Still, to the extent that Plaintiff's employer was aware of these facts during the relevant time-frame, Defendant was justified in questioning the sincerity of Plaintiff's religious objection. Although Defendant raises numerous facts that call into question the sincerity of Plaintiff's claimed religious objection to working on the Sabbath, the Court need not determine whether Plaintiff's objection

to working on the Sabbath was the product of sincerely held religious beliefs because Plaintiff's Title VII failure to accommodate claim fails for another reason discussed below.

ii.    *Bilateral Cooperation*

Defendant argues that summary judgment should be granted on Plaintiff's failure to accommodate claim because Plaintiff cannot demonstrate that he engaged in bilateral cooperation with Defendant when Defendant began making inquiries into the sincerity of Plaintiff's claimed religious beliefs.  "In requiring employers to 'offer reasonable accommodations,' [the Seventh Circuit has] encouraged 'bilateral cooperation' between the employee and employer and recognized that employers must engage in a dialogue with an employee seeking an accommodation."  *Porter v. City of Chicago*, 700 F.3d 944, 953 (7th Cir. 2012).  Although bilateral cooperation usually becomes necessary in the process of identifying a reasonable accommodation, courts have held that the duty also applies to the determination of whether there exists a duty to accommodate.  *Bushouse v. Local Union 2209, United Auto., Aerospace & Agric. Implement Workers of Am.*, 164 F. Supp. 2d 1066, 1075 (N.D. Ind. 2001) ("Title VII does permit an inquiry into the sincerity and religious nature of an employee or member's purported beliefs before the duty to accommodate such a belief arises[.]"); *E.E.O.C. v. Papin Enterprises, Inc.*, 2009 WL 2256023, at *4 n.11 (M.D. Fla. July 28, 2009) ("[A]s a matter of common sense an employer must be permitted some inquiry into the purported beliefs of an employee before the duty to accommodate arises.").

In this case, the undisputed facts indicate that Defendant repeatedly requested additional documentation from Plaintiff regarding his claimed religious objection to working on the Sabbath. Plaintiff does not cite to any cases indicating that an employer may not inquire into the sincerity of an employee's religious beliefs before the duty to accommodate arises.  Instead, Plaintiff argues

(1) that the letter from his brother was sufficient to establish the sincerity of his beliefs, and (2) that it was unclear what additional information Defendant wanted. With respect to the first point, the letter provided by Plaintiff's brother did not establish that it was against Plaintiff's sincerely held beliefs to work on Friday and Saturday. The letter does not explicitly say so. Although the letter indicated that Plaintiff belonged to a local Sabbath observing group [46-3 (Def.'s Ex. C)], it did not identify the group.

That brings the Court to Plaintiff's second point. Although Plaintiff asserts that it was unclear to him what additional information Defendant wanted, Defendant's December 1, 2014 email to Plaintiff (which Plaintiff admits he received) specifically asked for "documentation of the specific belief of Judeo-Christian doctrine with regard to Sabbath observance" and "identifying information for the local Sabbath observing group" with which Plaintiff is affiliated. [46-4 (Def.'s Ex. D).] Although the Court can appreciate that Plaintiff may not have understood exactly what was meant by "documentation of the specific belief of Judeo-Christian doctrine with regard to Sabbath observance," Defendant clearly asked that Plaintiff provide identifying information for the local Sabbath observing group referenced in his brother's letter.[15] Furthermore, Plaintiff acknowledged that he could have asked the reverend at his local church to write a letter, but he chose not to do so because his relationship with the reverend and/or his family was strained at the time. [46-1 (Pl.'s Dep. Tr.), at 48:18-23.] Given this testimony, Plaintiff's claim to not understand the kind of additional information that Defendant wanted rings hollow.

Given that Defendant had reason to doubt Plaintiff's claimed religious objection to working on Fridays and Saturdays, as well as the letter provided by Plaintiff's brother in Tennessee,

---

[15] Plaintiff repeatedly notes that his brother's letter indicated that Defendant could contact him for more information. Still, it is not unreasonable to believe that Plaintiff was a better source than his brother in Nashville in regard to identifying information for his local religious group.

Defendant was justified in seeking additional information from Plaintiff.[16]  EEOC guidance indicates that if "an employee requests religious accommodation, and an employer has an objective basis for questioning either the religious nature or the sincerity of a particular belief or practice, the employer would be justified in seeking additional supporting information."[17]  EEOC Compliance Manual § 12–I.A.3.  This position is supported by case law.  See *Adeyeye*, 721 F.3d at 451 ("If the managers who considered the request had questions about whether the request was religious, nothing would have prevented them from asking [the employee] to explain a little more about the nature of his request[.]"); *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011) ("Such a belief isn't impossible, but it is sufficiently rare that a prison's chaplain could be skeptical and conduct an inquiry to determine whether the claim was nonetheless sincere."); see also *E.E.O.C. v. Papin Enterprises, Inc.*, 2009 WL 2256023, at *4 n.11 (M.D. Fla. July 28, 2009) ("[A]s a matter of common sense an employer must be permitted some inquiry into the purported beliefs of an employee before the duty to accommodate arises. * * * Determination of sincerity is a delicate task, but an employer is entitled to investigate whether the belief is sincere and religious in nature.").  Absent the ability to inquire into the sincerity of a person's religious beliefs, "all

---

[16] As discussed above, Defendant submitted an affidavit from Teresa Maganzini indicating that "[g]iven the timing of the letter, questions about what, if any relationship the author of the letter had to [Plaintiff], and [her] own knowledge that Plaintiff had worked many Fridays and Saturdays in the past, [she] requested additional information from [Plaintiff] regarding his religious beliefs and his request for a religious accommodation."  [46-7 (Maganzini Aff.), at ¶ 14.]

[17] Indeed, under the Americans with Disabilities Act ("ADA"), an employee's failure to provide requested documentation of a disability is grounds for concluding that the plaintiff failed adequately to engage in the "interactive process" required under the ADA.  *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009) ("[O]ur cases have consistently held that disabled employees must make their employers aware of any nonobvious, medically necessary accommodations with corroborating evidence such as a doctor's note or at least orally relaying a statement from a doctor, before an employer may be required under the ADA's reasonableness standard to provide a specific modest accommodation the employee requests."); *Ranger v. Colvin*, 983 F. Supp. 2d 966, 976 (N.D. Ill. 2013) (granting summary judgment on disability discrimination claim where the plaintiff failed to provide medical documentation supporting requests).

statements of belief would have to be automatically accepted as sincerely held and be accommodated."[18] *Papin Enterprises, Inc.*, 2009 WL 2256023, at *4 n.11.

Because (1) Plaintiff previously was willing to work on Fridays and Saturday and (2) Plaintiff himself testified that he told his employer he could not work on Fridays and Saturdays because he was "used to" and "accustomed to" having those days off "to be able to worship with [his] family and do different things with [his] family," Defendant had an objective basis for questioning whether Plaintiff sincerely believed that it was against his religion to work during the sabbath. Plaintiff's failure to provide more information to his employer as requested is grounds for granting summary judgment. *Ranger*, 983 F. Supp. 2d at 976 (granting summary judgment on disability discrimination claim where the plaintiff failed to provide medical documentation supporting requests before she retired). Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's failure to accommodate claim.

## B.     Religious Discrimination

Plaintiff also claims that Defendant discriminated against him because of his religion. To succeed on a Title VII discrimination claim, Plaintiff "must prove three elements: '[1] [that] he is a member of a class protected by the statute, [2] that he has been the subject of some form of adverse employment action (or that he has been subjected to a hostile work environment), and [3] that the employer took this adverse action on account of the plaintiff's membership in the

---

[18] The Court notes that while the "validity" of a religious belief cannot be questioned, "the threshold question of sincerity * * * must be resolved in every case." *United States v. Seeger*, 380 U.S. 163, 185 (1965) (applying First Amendment law). Although sincerity must be resolved in every case, the Court does not hold that an employer always can require the kind of documentation requested by Defendant in this case. For example, in many instances, an employer would have no reason to question an employee's religious beliefs where the employee has acted—at least for the most part—consistent with the claimed relief. Here, however, the undisputed fact that Plaintiff was willing to be on call during the Sabbath before he was transferred provided Defendant a good faith basis for requiring some more documentation and/or explanation for Plaintiff's sudden change in beliefs without any sort of explanation from Plaintiff.

protected class.'" *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013)).  Here, the only adverse employment action identified by Plaintiff is his termination.[19]  If Plaintiff is able to establish his prima facie case of discrimination, the burden shifts back to the Defendant "to articulate a legitimate, non-discriminatory reason for terminating his employment." *Khowaja v. Sessions*, 893 F.3d 1010, 1015 (7th Cir. 2018) (citation omitted).  Plaintiff then must present evidence that the proffered reason is pretextual.  *Id.*

Although Defendant disputes whether Plaintiff can carry his burden of proving his prima facie case of discrimination at trial, for the purposes of this motion for summary judgment, Defendant asks that the Court proceed to the analysis of whether Defendant can articulate a legitimate, non-discriminatory reason for terminating Plaintiff's employment.  The Seventh Circuit has recognized that courts may consider an employer's claimed non-discriminatory reason for terminating an employee's employment without first addressing the employee's prima facie case. *E.E.O.C. v. Our Lady of Resurrection Med. Ctr.*, 77 F.3d 145, 149 (7th Cir. 1996) (collecting cases).

Defendant argues that summary judgment should be granted on Plaintiff's religious discrimination claim because Plaintiff was not meeting the reasonable expectations of his employer when his employment was terminated.  Specifically, Defendant has identified evidence showing that it terminated Plaintiff because of his absenteeism.  Ms. Maganzini submitted an affidavit averring that she terminated Plaintiff because of his continuing failure to report to work. [46-7 (Maganzini Aff.), at ¶¶ 2, 19.]  The reason for termination listed on the Discharge Action

---

[19] Although the denial of a request for an accommodation may qualify as an adverse action, that is only if the request for an accommodation improperly was denied.  *Meador v. Metro. Water Reclamation Dist. of Greater Chicago*, 2007 WL 4162809, at *13 (N.D. Ill. Nov. 15, 2007) ("But the action is only adverse if he can prove that he was improperly denied a reasonable accommodation.").  Here, Defendant never denied Plaintiff's request for an accommodation. Defendant did ask Plaintiff to provide more information regarding his claimed religious belief, but for the reasons discussed above, that request was not improper, and Plaintiff never responded to it.

Document was job abandonment. [46-6 (Def.'s Ex. F).] The Discharge Action Document noted that Plaintiff failed to report to work on 30 days from November through January, including January 6-8, 2015, the three days immediately preceding his termination. [*Id.*] The Discharge Action Document further noted that Plaintiff was absent from work for three consecutive days without calling a supervisor. [*Id.*] Plaintiff does not contend that he showed up to work on the days listed on the Discharge Action Document. Nor does he offer *any* explanation for these absences.

The Court recognizes that Plaintiff submitted his resignation on November 2, 2014. [48, at 24.] But Plaintiff does not argue that he was constructively discharged. Nor could he, given that the undisputed evidence establishes that Defendant did not accept Plaintiff's resignation. In fact, Plaintiff continued to work for Defendant after he submitted his resignation letter. [46-1 (Pl.'s Dep. Tr.), at 44:24-45:10.] Plaintiff "called off" work on November 26, 2014 because of illness, not because he had resigned or because his request for an accommodation was still pending. [46-5 (Def.'s Ex. E); 46-1 (Pl.'s Dep. Tr.), at 54:14-18.] He again called on sick on December 2, 2014. [46-5 (Def.'s Ex. E); 46-1 (Pl.'s Dep. Tr.), at 54:23-55:6.] Plaintiff has not offered any explanation for his failure to return to work after December 2, 2014. Although Plaintiff has presented evidence indicating that he was unable to get a hold of his immediate supervisor regarding his absences in December, Plaintiff has not presented evidence showing that he attempted to contact him regarding his unexcused absences in January. Furthermore, although Plaintiff testified that he was "pretty sure" that he called Ms. Maganzini after he received her December 19, 2014 letter requiring that he contact her, he could not actually recall reaching out to her. Finally, Plaintiff does not dispute that he was terminated on January 9, 2015. [46 (Def.'s Stmt. of Facts), at ¶ 41.]

Given that Plaintiff's request for a religious accommodation was still pending, Plaintiff arguably was justified in missing work on Fridays and Saturdays (although that proposition is highly questionable in light of Plaintiff's continued failure to provide additional information as requested by Defendant). Still, although some of the challenged absences were on Fridays and Saturdays (*i.e.*, on the Sabbath as Plaintiff views it), twenty of the challenged absences were on other days of the week. Plaintiff's absenteeism is a legitimate, non-discriminatory reason for terminating Plaintiff's employment. *Lindemann v. Mobil Oil Corp.*, 940 F. Supp. 189, 196 (N.D. Ill. 1996) ("Courts have held that excessive absenteeism is a legitimate, nondiscriminatory reason for terminating an employee which is dispositive unless there is evidence that absenteeism is merely a pretext[.]"), aff'd, 141 F.3d 290 (7th Cir. 1998). Defendant therefore has shifted the burden back to Plaintiff to establish that his absenteeism was a pretextual justification for his termination. *Khowaja*, 893 F.3d at 1015.

Plaintiff argues that a reasonable jury could find that his employment was terminated because of his scheduling conflict with his supervisor Mr. Carr and not because of his absenteeism. However, Plaintiff has not identified evidence—beyond mere speculation—that would support that conclusion. Furthermore, the Court notes that even if Plaintiff had provided Defendant with sufficient documentation of his religious objection to working on the Sabbath, this would not mean that Defendant legally would have been required to provide Plaintiff with his requested schedule to the detriment of his supervisor. "Title VII does not require an employer to interfere with a valid seniority system in the interests of religious accommodation." *Rose v. Potter*, 90 F. App'x 951, 953 (7th Cir. 2004) (citing *US Airways, Inc. v. Barnett*, 535 U.S. 391, 403 (2002); *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 79 (1977)). The Court therefore finds it implausible that

Defendant would fabricate a pretextual justification for terminating Plaintiff's employment on that basis.

Plaintiff also argues that a reasonable jury could find that "[Ms.] Maganzini intervened in the matter by removing Ms. Barnes from her position as Human Resources Director, then assuming her title and engaging in a conspiracy to," in her own words, "make it go away." [49 (Pl.'s Mem.), at 6.] However, as discussed above, Plaintiff has not identified any evidence showing that Ms. Barnes's change in position was in any way connected to Plaintiff's request for an accommodation. To the contrary, Ms. Barnes testified that she was not demoted and that her position changed because there was a restructuring of the department that went into effect once the union went into effect. [53 (Barnes Dep. Tr.), at 10:16-20.] Furthermore, to the extent that Plaintiff relies on Ms. Maganzini's statement that Defendant made a settlement offer to Plaintiff to "make it go away," Plaintiff has not presented any evidence regarding when the settlement offer was made. A post-termination settlement offer to make the prospect of costly litigation go away does not undermine Defendant's contention—supported by documentary evidence—that Plaintiff was terminated because of his absenteeism. Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's Title VII religious discrimination claim.

## C.    Retaliation

Plaintiff's amended complaint indicates that he is seeking to bring a retaliation claim against Defendant. [15, at 4.] Yet neither party discusses such a theory in their summary judgment briefs. "To state a retaliation claim under Title VII, 'the plaintiff must prove that he engaged in protected activity and suffered an adverse employment action, and that there is a causal link between the two.'" *Emerson v. Dart*, 900 F.3d 469, 472 (7th Cir. 2018) (quoting *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016)), reh'g denied (Sept. 25, 2018). As with

a Title VII discrimination claim, if a plaintiff makes a prima facie showing of retaliation, the burden shifts to the employer to identify a legitimate, nondiscriminatory reason for the adverse employment action. *Alexander v. Gerhardt Enterprises, Inc.*, 40 F.3d 187, 195 (7th Cir. 1994). Once the employer makes such a showing, the burden shifts back to the employee to establish that the proffered reason was pretextual. *Id.* To the extent that Plaintiff seeks to bring a retaliation claim based on his termination, for the same reasons the Court grants summary judgment on Plaintiff's discrimination claim, the Court questions whether Plaintiff's retaliation claim remains viable. Specifically, the Court questions whether Plaintiff can meet his burden of showing that Plaintiff's purported justification for terminating Plaintiff was pretextual. To the extent that Plaintiff seeks to bring a retaliation claim based on the denial of his request for an accommodation, the Court suspects that such a claim would be barred as a repackaging of Plaintiff's failure to accommodate claim. *Koty v. Zaruba*, 2017 WL 4150684, at *7 (N.D. Ill. Sept. 19, 2017) ("Courts * * * do not recognize ADA retaliation claims that are simply repackaged failure to accommodate claims."), aff'd sub nom. *Koty v. DuPage Cty., Illinois*, 900 F.3d 515 (7th Cir. 2018).

The Court therefore is considering granting summary judgment on Plaintiff's retaliation claim. Before doing so, however, the Court gives Plaintiff notice of that possibility and an opportunity to respond. *Hertel v. Miller-Lewis*, 695 F. App'x 957, 961 (7th Cir. 2017) ("[A] district court may grant summary judgment on its own initiative, even on grounds not argued by the winning party, so long as the losing party is given notice and a full opportunity to respond." (citing *Pactiv Corp. v. Rupert*, 724 F.3d 999, 1001-02 (7th Cir. 2013)). Plaintiff is given until April 29, 2019 to file a brief addressing the issues flagged by the Court and to identify any admissible evidence relating to the viability of his retaliation claim. Plaintiff's failure to file these materials by that date will result summary judgment being granted in favor of Defendant on

Plaintiff's retaliation claim and this civil case being terminated.  Defendant is given until May 27, 2019 to file a response to any materials Plaintiff may file.

### D.    Punitive Damages

Defendant also argues that Plaintiff should be precluded from seeking punitive damages if summary judgment is denied.  Because the Court is granting Defendant's motion for summary judgment on Plaintiff's Title VII failure to accommodate and discrimination claims, this issue is moot with respect to those claims.  If Plaintiff is allowed to proceed with his retaliation claim, Defendant may again raise this issue with respect to that claim.

## IV.    Conclusion

For the reasons set forth above, Defendant's motion for summary judgment [43] is granted. Plaintiff is given until April 29, 2019 to file materials relating to the viability of his retaliation claim, as discussed above.  Plaintiff's failure to file these materials by that date will result summary judgment being granted in favor of Defendant on Plaintiff's retaliation claim and this civil case being terminated.  Defendant is given until May 27, 2019 to file a response to any materials Plaintiff may file.  The Court will set this case for further status hearing after reviewing any materials submitted on the briefing schedule above.

Dated: March 29, 2019

_____
Robert M. Dow, Jr.
United States District Judge